### CHARLESTOWN.

An election can only be effected by the votes of a majority of the electors, to be ascer-tained by counting the whole number of ballots given in; and where several persons are to be elected at the same time by general ticket, each piece of paper given in is to be counted as a ballot, whether it have on it the requisite number of names or not.

The election of David Goodwin, Thomas Harris, William Austin, and John Soley, members returned from the town of

Charlestown, was controverted by Abner Rodgers and others, on the ground, that illegal votes were received, and that it did not appear that the members returned had a majority of the votes given in, at the said election.[1]

On the eleventh of June,[2] the committee on elections made the following report in this case[3]:—

"At a meeting of the inhabitants of said town, duly notified and warned, on the third day of May now last past, for the choice of representatives, the selectmen called upon the qualified voters to bring in their votes for five persons, to represent said town in this general court. After the poll was closed, the selectmen proceeded to sort and count the votes, and made declaration that they were as follows:—For David Goodwin, 322 votes; Thomas Harris, 322; William Austin, 321; John Soley, 321; Daniel Tufts, 319; Joseph Miller, 320; Joseph Hurd, 320; Nathaniel Austin, Jr., 320; Joseph Tufts, 320; Timothy Walker, 318; Timothy Thompson, 1; Elias H. Derby, 1: and the selectmen also declared, that the said David Goodwin, Thomas Harris, William Austin, and John Soley, were chosen.

The committee ascertained by testimony, and by the agreement of the parties, that the selectmen obtained the above result by adding together all the above numbers, which made 3205, and dividing that aggregate by five, the number of persons to be voted for as representatives. It appeared, therefore, by this mode of calculation, that there were six hundred and forty-one electors who voted. The selectmen assumed this last number as the true number of electors, and finding that three hundred and twenty-one was a majority of the assumed number, made the declaration before stated.

The committee also ascertained, by full and satisfactory evidence, and by the agreement of parties, that a number of electors gave in ballots, having on them a less number of names than five, and that there were sixty-five names, a part of the above aggregate, given in on ballots, containing a less number than five; that there were six hundred and twenty-

[1] 34 J. H. 23.          [2] Same, 129.          [3] Same, 134.

eight full ballots, that is, ballots containing five names each, which were given in by six hundred and twenty-eight electors; that there were two ballots given in by two electors, containing two names only on each ballot. The four names, thus given in, deducted from sixty-five, leave sixty-one names to be accounted for, which were borne on ballots containing less than five names each. The necessary result of calculation is, that those sixty-one names could not have been voted for by a less number of electors than sixteen. Adding, then, to the number of electors who voted with full ballots, to wit, 628, the number who must have voted with ballots containing less than five names, to wit, 18, the result is, that 646 electors, at least, actually voted at the choice of representatives by the town of Charlestown, on said third day of May; of which number 324 are necessary to make a choice. And inasmuch as no one of the said sitting members had that number of votes, the committee are of opinion, and do accordingly report, that the said David Goodwin, Thomas Harris, William Austin, and John Soley, Esquires, are not legally chosen, and are not entitled to seats in this house, and that the same be declared vacated."

When this report was taken into consideration:

Mr. Harris contended, that the selectmen adopted the only method which would lead to a correct result. He said the sitting members had each a majority of the votes, though not a majority of the ballots. He thought those electors, who were called upon to vote for five persons to represent the town, and who voted only for one, waived four-fifths of their right, and ought to have credit only for the remainder, in making up the result. The same principle would apply to those, who voted for more than one, and less than five.

Mr. Harris said that he understood the committee to have determined the choice by ballots instead of votes. To show that this was a fallacious mode, he stated the following case:—

Suppose 323 voters vote each for a list of five candidates, A, B, C, D and E.  *votes.*
   The aggregate number would be   -    -    -    -    -    -    1615
Suppose 323 others vote each for only one, but for different candidates; viz.
   64 vote for F—64 for G—64 for H—64 for I—and 67 for K. -    -    -    323

As each of the first five candidates has 323 votes, and the others only 64 each, except K, who has 67—or, as the first five have 1615 votes, and the other five only 323—it is clear, and will be allowed, that the first five have a majority of the votes, and are chosen. Yet they have not a majority of the ballots. They have, however, a majority of 259 votes over F, G, H and I: and a majority of 256 over K.

This, Mr. Harris considered as conclusive, to show that the number of ballots is not the criterion, by which the question should be decided.

Mr. D. Sargent, in reply, observed that the selectmen committed an error in adopting the number 5 as a divisor in this case. He said it might sometimes be difficult to ascertain what the divisor ought to be; but in taking the number of ballots as a rule to determine the choice, there could be no mistake. According to the gentleman's doctrine, that each of the sitting members had a majority of votes, and were therefore legally chosen, it would be easy to show, that cases might happen, in which a number of rival candidates would all have a majority of votes: for instance, 50 voters give in their ballots for five candidates each, A, B, C, D and E—and 50 others for four candidates each, F, G, H and I—the whole number of votes would be 450. Divide this number by 5, and the quotient will be 90. Of course, 46 would be said to make a choice; and each of the candidates having 50 votes, they would all be declared chosen.

As to the example put by the gentleman, in which he thought it so clear that the first five candidates would be chosen; it is true they would have a plurality of votes, or each of them a greater number than either of the opposite candidates; but as 323 electors voted for one list, and 323 against it, or for the opposite list, how could it be said they had a majority? If a plurality of votes is to make a choice, then a candidate having two votes would be chosen, though other candidates, however numerous, should be voted for, provided they had but one vote each. But if, as is probable, it is meant, by a majority of the votes, that a certain number of candidates, on the list, had collectively a greater number of votes than certain other candidates, on another list; it would then follow that a large number of candidates, each having one vote only, would be chosen; while a smaller number of candidates, each having more than one vote, would not be chosen. In the Charlestown election, for instance, if 120 of the electors had voted for a list of five persons, A, B, C, D and E, and the remaining 525 electors had each voted for only one person, no two voting for the same, it would then be said, according to this principle, that the list of five were chosen, because they had a majority of the votes. If 300 of the electors had voted for a list of five each, and the remaining 346 for another list of four each; the five would also, in this case, be declared chosen, and the four not, according to the last mentioned principle. But according to the rule adopted by the selectmen, all the nine candidates, in the last instance put, would be elected. The whole number of votes would have been 2884; this number divided by 5 would give a quotient of 576 and a fraction; necessary to make a choice, 289; which is a less number than any of the candidates had. A method which leads to such absurdities, must be wrong.

Mr. Reddington said he considered this case settled by the determination of the house in 1809, in the case of the petition of John Whiting and others, against the election of Messrs. Ware and Mann, who were returned as members from the town of Wrentham.[1] In that case, the two members returned had a number of ballots containing both their names, and a number containing only one of their names. Another candidate's name was found on other ballots. The selectmen severed the names, where they found them on one ballot, before they counted the votes, so that the whole number of ballots, or persons voting, could not be ascertained.

The members' seats were declared vacated, because it could not be known whether they were voted for by a majority of the electors.

The present case is stronger than that; for here the house know, that no one of the members, whose seats are in dispute, had such a majority.

[1] Ante, 70, 71.

The report was agreed to; 163 in the affirmative, 7 in the negative.

" The principle on which the house made its decision," in this case, seems to be simply this; that members returned, must be voted for by a majority of the electors who vote at the choice.[1]

---

[1] One of the members, whose election was in question, in this case, appears to have participated in the debate, without afterwards withdrawing from the house; contrary to the rule of parliamentary practice, which requires a member to withdraw, when matters are under discussion, in which he is personally concerned. The member is allowed to remain until the matter is distinctly before the house, either in the form of a question or otherwise; he is then to be heard in his place, and to withdraw from the house, until the subject be disposed of. In England, this rule does not now apply to the case of a controverted election, in the house of commons; the report of the committee thereon being made final and conclusive by statute, without the intervention of the house.

